UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>    ELJEN CORP.,<br><br>        Debtor. | )<br>)<br>) Chapter 11<br>) Case No. 12-19105-HJB<br>)<br>)<br>)<br>) |

**OBJECTION OF PEOPLE'S UNITED BANK TO THE
DEBTOR'S MOTION TO SELL REAL PROPERTY**

Now comes People's United Bank (the "**Bank**"), a secured creditor and holder of a valid and perfected first priority *Mortgage and Security Agreement (with Collateral Assignment of Leases and Rents)*, and hereby objects to Eljen Corp.'s (the "**Debtor**") Motion to Sell Real Property (the "**Motion**") in so far as (i) the proposed Purchase and Sale Agreement (the "**Sale Agreement**") to Synergy Concepts, LLC (the "**Buyer**") is illusory and nothing more than an option to purchase the Debtor's real property (the "**Premises**") without an earnest deposit and proper consideration to the Debtor's estate for such a right; (ii) grants an easement prior to closing and without consideration to the lienholders, including the Bank's first mortgage, whose collateral is permanently impaired as a result of the easement, and without consideration to the Debtor, other than a reduction of an otherwise unquantified unsecured claim in violation of the Bankruptcy Code, and without meeting the requirement of Bankruptcy Rule 9019; (iii) the requested counteroffer and bid requirements in the Motion chill prospective bidders from submitting increased counteroffers; and (iv) the Motion requests that the Court find that the buyer is good faith purchaser under Section 363(m) of the

1

Bankruptcy Code notwithstanding the fact that numerous terms are for the sole benefit of the proposed purchaser's affiliate and violate the absolute priority rule.

In support of this Objection, the Bank respectfully states as follows:

### A. Relevant Background and Procedural History

1. The Bank, as successor by merger to Flagship Bank and Trust Company ("**Flagship**"), is the present holder of a certain $550,000.00 Commercial Term Promissory Note executed by the Debtor and delivered to Flagship dated September 13, 2007 (as amended, the "**Note**").

2. The Debtor's obligations under the Note are secured by a certain *Mortgage and Security Agreement (with Collateral Assignment of Leases and Rents)* given by the Debtor to Flagship, dated September 13, 2007 and duly recorded with the Suffolk County Registry of Deeds, Book 42489, Page 245 and filed with the Suffolk County Registry District of the Land Court as Document No. 742826 noted on Certificate of Title No. 110681 at Book 549, Page 81 (the "**Mortgage**").

3. The Debtor incurred the obligations under the Note to Flagship for the purpose of financing the environmental remediation of the Debtor's Premises arising from the Gerald Goldsmith's, the Debtor's principal, prior operation of a laundromat on the Premises. Notwithstanding the fact that the Bank's loan to the Debtor was made more than five years ago, the environmental remediation of the properties has yet to be commenced. Furthermore, the Debtor has incurred additional liabilities in connection with the environmental remediation without the ability to pay as evidenced by the junior mortgage held by Environmental Compliance Services, Inc.

4. On September 13, 2012, the Debtor's obligations to the Bank under the Note matured and on or about September 14, 2012, the Bank made demand upon the Debtor. A foreclosure sale of

the Premises was scheduled for November 16, 2012, but the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code on November 15, 2012 (the "**Petition Date**") thereby staying the foreclosure.

5. As of the Petition Date, the Debtor was indebted and liable to the Bank under the Note in the principal amount of $431,869.18 plus accrued and unpaid interest to in the amount of $8,133.65, escrow payments in the amount of $2,787.21, late charges in the amount of $27,680.66, and attorneys' fees in the amount of $35,672.69, costs of collection in the amount of $9,496.00, together with any additional interest, attorneys' fees and costs of collection (the "**Prepetition Obligations**"). See Bank's Secured Proof of Claim which is incorporated by reference herein.

6. The Premises are subject to the following liens and encumbrances: (i) to the Bank in the amount of $515,639.39 plus attorneys' fees and costs of collection; (ii) to Rath, Young & Pignatelli, P.C. in the amount of $50,000.00; (iii) to Environmental Compliance Services Inc. in the amount of $260,218.00; (iv) to Gallant & Ervin, LLC in the amount of $13,943.53; and (v) to the City of Boston in the amount of $15,454.76.

### *B. The Relief Requested*

7. In the Motion, the Debtor seeks authorization and approval to sell the Premises pursuant to the terms of the Sale Agreement by and between the Debtor and Buyer. The Motion indicates that an as yet undetermined amount of the so-called minimum proposed purchase price of $3,040,000.00 is to be held in escrow for (i) the payment of the environmental response costs of an abutter, Rugg Road Realty Trust, an affiliate of the Buyer and an unsecured creditor of the Debtor; and (ii) the payment of the Buyer's remediation expenses of the Premises (the "**Environmental Escrow**").

3

8.      Rugg Road Realty Trust's unsecured prepetition claims arise out of the state court litigation commenced prior to the Petition Date by the Rugg Road Realty Trust, as plaintiff, and against the Debtor and the Debtor's principal, Gerald Goldsmith d/b/a the Sunshine Laundromat, as defendants, for environmental contamination and remediation of its abutting property known and numbered as 20-32 Rugg Road and 18-38 Penniman Road, Allston, Massachusetts (the "**Abutting Property**").

9.      The Sale Agreement provides that the total amount of the Environmental Escrow shall be funded at closing and not exceed the "the net purchase price the net purchase price proceeds, after payment and discharge of all mortgages, liens, closing costs, attorneys' fees, and other obligations of the Seller, and the payment of at least $100,000 of the net purchase price proceeds to the Seller." Sale Agreement at ¶ 17(a).

10.     The aggregate mortgages and liens on the Premises, the broker's fee of $150,000.00, and the contemplated $100,000.00 payment to the Debtor is approximately $1,105,000.00 leaving a remaining balance of 1,935,000.00 to pay attorneys' fees, additional closing costs, and fund the Environmental Escrow. Following closing, the Buyer shall assume responsibility for the environmental remediation and response for the Premises and the Abutting Property and may disburse funds from the Environmental Escrow pursuant to the Sale Agreement and an escrow agreement referenced therein but not attached to the Sale Agreement.

11.     Although not sufficiently described in the Motion, the Sale Agreement provides, in relevant part, that:

> If the Agreement has not been terminated by Buyer by the Escrow Agreement Date, as defined in Section 18, below, Seller shall at that time convey to Rugg Realty Trust, upon written direction of Buyer, an

4

easement in the Premises in the form annexed hereto as Exhibit A (the "Easement"). If the sale of the Premises is completed and title conveyed to Buyer, as contemplated by this Agreement, no further consideration shall be due from Buyer to Seller for the Easement. *If this Agreement is terminated and the Premises are not conveyed to Buyer, then Seller shall receive from Buyer the following consideration for the Easement:*

(a)     *a credit of $75,000.00 to Seller and Gerald Goldsmith ("Goldsmith") against the Buyer's claim of environmental response costs incurred by Buyer or Rugg Realty Trust*, as alleged in the lawsuit by Rugg Realty Trust against Seller and Goldsmith pending in Suffolk County Superior Court, Civil Action No. 09-4073A (the "Action"); and

(b)     a release from Rugg Realty Trust to Seller from any and all costs, including environmental response costs, incurred by Seller or Rugg Realty Trust, and any successors or assigns, *relating to the development or use of the Easement*, as follows:

Buyer, and its officers, shareholders, successors, affiliates, predecessors-in-interest, agents, representatives and assigns, and Rugg Realty Trust, and its trustees, beneficiaries, agents, representatives, successors and assigns, hereby release and discharge Seller, and its officers, shareholders, successors, agents, representatives and assigns, and Gerald Goldsmith, and his heirs, agents, successors and assigns, from and against any and all claims, causes of action, damages, losses, loss of use, costs (including but not limited to environmental response action costs) and damages arising from or relating to the construction, development or use of the Easement or in any other manner relating to the Easement.

Sale Agreement at ¶ 16 (emphasis added).

12.     The term "Escrow Agreement Date" is defined in the Sale Agreement as January 31, 2013.

### C.     *The Bank's Objection to the Motion*

13.     The Bank objects to the Motion and submits that the Sale Agreement (i) is illusory, premature and not in the best interests of the Debtor, its estate, or its creditors; (ii) grants an

5

easement prior to closing and without consideration to the lienholders, including the Bank's first mortgage, whose collateral is permanently impaired as a result of the easement, and no real consideration to the Debtor other than a reduction of an otherwise unquantified unsecured claim in violation of the Bankruptcy Code and without meeting the requirement of Bankruptcy Rule 9019; (iii) requires counteroffers that otherwise discourage competing bids; and (iv) requests a finding that the Buyer is a good faith purchaser pursuant to Section 363(m) of the Bankruptcy Code without sufficient facts substantiating the same.

i. <u>The Proposed Sale is Illusory and Premature</u>.

14. The Sale Agreement does not require the Buyer to deliver a deposit to secure its "best efforts" to obtain the requisite the necessary permits and approvals from the Boston Redevelopment Authority and the Zoning Board of Appeal during the first eight months following execution of the Sale Agreement (the "**Permitting Period**"). In the event that the Buyer requires an extension of the Permitting Period for a further four months, the Buyer is then required to deliver an initial deposit of $100,000.00. The initial deposit only becomes non-refundable, however, upon the Buyer's exercise of a further three-month extension and payment of an additional deposit of $100,000.00. In essence, the Buyer has a one-year option on the Premises without payment or a deposit for such option.

15. Given the lengthy permitting process together with the Buyer's unfettered ability to terminate the Sale Agreement up to one year from its execution without forfeiture of any deposit, the proposed sale to Buyer is largely illusory. Absent a non-refundable deposit due upon execution of the Sale Agreement, the Sale Agreement does not adequately protect the Debtor's estate in the event that it is terminated a year from now and during such period the Debtor is unable to pursue other potential opportunities with respect to the Premises. In light of the foregoing and the unfavorable terms

afforded the Debtor, the Sale Agreement is not in the best interests of the Debtor, its estate or creditors.

16.     Although the Sale Agreement contemplates an initial purchase price of $3,040,000.00 and provides for upward adjustment to maximum purchase price of $3,400,000.00, the Sale Agreement requires that the Debtor place a currently unknown amount of the foregoing purchase price in escrow for reimbursement of the environmental remediation costs for both the Premises and Rugg Road Realty Trust, an abutting unsecured creditor and affiliate of the Buyer. Upon information and belief, the Debtor and the Buyer have not fixed the amount of the estimated remediation costs for both properties, which may be substantial. As such, it is uncertain whether there will be sufficient proceeds to satisfy the various secured liens on the Premises, pay any outstanding administrative expense claims, and fund a distribution to unsecured creditors.

17.     As set forth above, it is unclear whether the Buyer will obtain the requisite approvals and permits within the eight to fifteen-month period afforded by the Sale Agreement. Absent such information, and together with potential downward adjustment for environmental remediation, it is impossible for the Debtor, or any other party in interest, to determine whether the proposed sale is in the best interest of the Debtor.

ii.     The Sale Agreement Improperly Grants Rugg Realty Trust Easement Irrespective of the Sale to Buyer and Without Consideration to the Lienholders.

18.     Regardless of whether the Buyer terminates the agreement, the Sale Agreement grants, as of January 31, 2013, Rugg Road Realty Trust an easement over a portion of the Premises. In the event that the Sale Agreement is terminated, Rugg Realty Trust, which is not a signatory to the

Sale Agreement, is to credit the liability of the Debtor and Mr. Goldsmith liability for the environmental response costs of Rugg Realty Trust in the amount of $75,000.00.

19. The Motion does not purport to seek approval of the partial compromise of Rugg Realty Trust's claim pursuant to Rule 9019 nor does it address how a transfer of an interest in the Debtor's property to an unsecured creditor on account of its unsecured claims is in the best interests of the Debtor and its estate or fair and equitable to the senior secure creditors whose collateral is permanently impaired without any consideration.

20. Moreover, the Motion wholly ignores the fact that the Debtor is transferring an interest in the Debtor's property on account of a prepetition unsecured claim in violation of Sections 1122 and 1123 of the Bankruptcy Code.

21. Most importantly, the grant of an easement impairs the Bank's Mortgage by reducing the value of the subject parcel and its collateral. Absent additional and further adequate protection equal to the diminution in value of the Bank's collateral, this Court should not approve the Sale Agreement and the grant of the easement as contemplated therein.

iii.     The Counteroffer and Bid Requirements Discourage Competitive Bidding.

22. Quite remarkably, the Debtor has requested that any party submitting a counteroffer deliver a deposit in the amount of $100,000.00 where the Buyer has not delivered a deposit at all. The Debtor has also requested that an initial counteroffer must equal the so-called minimum purchase price of $3,040,000.00. As set forth above, the Buyer's initial purchase price does not reflect any downward adjustment for environmental remediation. A prospective bidder may disagree with the Buyers terms and estimation of the environmental remediation costs associated with the property resulting in the potential for differing terms.

8

23. Moreover, any overbids should not exceed the actual consideration to be paid to the Debtor and should not include any amounts to fund the Environmental Escrow. Requiring a prospective bidder to include such terms and conditions that are specific to the Buyer and inure to the benefit of the Buyer's affiliate is inappropriate and only serve to chill any competing bids for the Premises.

iv. <u>The Terms of the Sale Agreement Contravene a Finding of Good Faith Under Section 363(m)</u>.

24. The Debtor's request that this Court find that Buyer is a good faith purchaser and thereby entitled to the rights and benefits afforded by Section 363(m) of the Bankruptcy Code is unwarranted.

25. One need look no further than the terms reimbursing the environmental remediation costs of the Buyer's affiliate, the absence of any protective deposit and the grant of an easement for the benefit of the Buyer's affiliate to reach the reasonable conclusion that the proposed purchase was largely the product of the environmental litigation commenced by the Buyer's affiliate and the resulting leverage of such litigation.

26. Notwithstanding the foregoing, the Motion is silent as to what facts and circumstances exist that would further support a finding of good faith. Absent evidence to the same, this Court should abstain from making such a finding.

27. Given the improper and premature nature of the relief sought in the Motion and for the further reasons set forth above, this Court should sustain this Objection and deny the Motion.

28. The Bank reserves the right to raise any further and other objection to the Motion and Sale Agreement at the hearing scheduled thereon.

WHEREFORE, People's United Bank respectfully requests that this Court enter an Order: (i) Sustaining People's United Bank's objection and denying the Motion; and (ii) Granting People' United Bank such other relief and further relief as it deems necessary.

Respectfully submitted,

/s/ Brendan C. Recupero
James C. Fox (BBO# 548664)
Brendan C. Recupero (BBO# 645032)
RUBERTO, ISRAEL & WEINER, P.C.
255 State Street, 7th Floor
Boston, Massachusetts 02109
Telephone: (617) 742-4200
Facsimile: (617) 742-2355

Attorneys for People's United Bank

Dated: February 4, 2013

s:\wdox\bank_re\bank\10550\00017\00248589.doc

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: <br><br> ELJEN CORP., <br><br> Debtor. | ) <br> ) <br> ) Chapter 11 <br> ) Case No. 12-19105-HJB <br> ) <br> ) <br> ) <br> ) |

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the Objection of People's United Bank to the Debtor's Motion to Sell Real Property and this Certificate of Service on behalf of People's United Bank to those parties named on the attached Service List by mailing a copy of same via regular mail, postage prepaid unless otherwise indicated thereon, this 4th day of February, 2013.

Respectfully submitted,

/s/ Brendan C. Recupero
James C. Fox (BBO# 548664)
Brendan C. Recupero (BBO# 645032)
RUBERTO, ISRAEL & WEINER, P.C.
255 State Street, 7th Floor
Boston, Massachusetts 02109
Telephone: (617) 742-4200
Facsimile: (617) 742-2355

Attorneys for People's United Bank

s:\wdox\bank_re\bank\10550\00017\00254539.doc

| | | |
|---|---|---|
| Eljen Corp.<br>2605 Stearns Hill Road<br>Waltham, MA 02451 | Nina M. Parker<br>Parker & Associates<br>10 Converse Place<br>Winchester, MA 01890<br>**VIA ECF** | Jennifer L. Hertz<br>U.S. Department of Justice<br>Office of the U.S. Trustee<br>5 Post Office Square, Suite 1000<br>Boston, MA 02109<br>**VIA ECF** |
| William J. Alpine<br>Environmental Compliance Services, Inc.<br>10 State Street<br>Woburn, MA 01810 | Scott Carman<br>Gallant & Ervin, LLC<br>One Olde North Road, #103<br>Chelmsford, MA 01824 | City of Boston<br>City Hall Room M-5<br>One City Hall Square<br>Boston, MA 02201<br>Attn. John F. Houston, Jr. |
| Gilbert F. Whittemore<br>Rath, Young and Pignatelli, P.C.<br>54 Canal Street<br>Boston, MA 02114 | | |